**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KODIAK GAS SERVICES, LLC,<br><br>Plaintiff<br><br>v.<br><br>ALEX LAPIANA AND JESUS ELIZONDO,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. 4:24-cv-04942 |

**COMPLAINT**

## I. INTRODUCTION

1. This case involves theft of confidential information and trade secrets by two long-standing Kodiak executives who left to join a startup competitor.

2. Alex LaPiana was most recently Assistant Treasurer at Kodiak, and, before that, he was Kodiak's Vice President of Corporate Development. Jesus "Chuy" Elizondo served in multiple roles at Kodiak between January 2020 and September 2024, including executive roles such as Vice President of Technical Services and Vice President Operations, ecoView. In these roles and throughout their time at Kodiak, LaPiana and Elizondo both acquired and helped develop Kodiak's proprietary, confidential, and trade secret information. LaPiana and Elizondo were highly compensated for their work at Kodiak, and received multiple awards of restricted stock units (RSUs), making them partial owners of the company. In connection with these RSU awards, LaPiana and Elizondo signed agreements in which they acknowledged the competitive nature of Kodiak's business and the value of—and importance of confidentiality regarding—Kodiak's proprietary, confidential, and trade secret information. LaPiana and Elizondo executed multiple restrictive employment covenants with Kodiak during their time at the company, and, in so doing,

agreed to certain non-disclosure, confidentiality, non-interference, and non-solicitation provisions, detailed herein.

3. Nevertheless, in September 2024, LaPiana and Elizondo abruptly left Kodiak to join a competitor that had been founded by Kodiak's former General Counsel. While they were still employed at Kodiak, but after they had begun contemplating joining Kodiak's competitor, LaPiana and Elizondo stole Kodiak's proprietary, confidential, and trade secret information, in direct violation of their restrictive covenants regarding nondisclosure, confidentiality, and the return of company information.

4. After learning that LaPiana and Elizondo were leaving to join a competitor, Kodiak hired a third-party investigator to conduct a forensic analysis of LaPiana and Elizondo's Kodiak-issued work computers. The forensic analysis revealed that LaPiana and Elizondo each copied Kodiak's proprietary, confidential, and trade secret information without authorization, and removed it from Kodiak's premises for their own purposes, in violation of their agreements and federal and state law.

5. The direct and proximate result of Defendants' theft of Kodiak's proprietary, confidential, and trade secret information includes compensable damages and irreparable injury in the form of actual and threated misappropriation of Kodiak's trade secrets. LaPiana and Elizondo have violated not only their contractual obligations to Kodiak, but also federal and state trade secret law. They must be stopped.

## II. <u>PARTIES</u>

6. Plaintiff Kodiak Gas Services, LLC is a foreign limited liability company with its principal place of business in Texas. Kodiak's principal executive offices are located at 9950 Woodloch Forest Dr., 19th Floor, The Woodlands, Texas 77380.

7. Defendant Alex LaPiana is an individual residing in Harris County, Texas whose

last known address is 10030 Briarwild Lane, Houston, Texas 77080. Alex LaPiana may be served with process at his residence or wherever he may be found.

8. Defendant Jesus "Chuy" Elizondo is an individual residing in San Patricio County, Texas whose last known address is 8175 County Road 4339, Taft, Texas 78390. Jesus Elizondo may be served with process at his residence or wherever he may be found.

## III. JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over Kodiak's cause of action arising under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § § 1831, *et seq.*, pursuant to 28 U.S.C. § 1331.

10. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Kodiak's remaining causes of action in this Complaint because they form part of the same case or controversy.

11. This Court maintains general personal jurisdiction over both LaPiana and Elizondo because they are Texas residents.

12. Venue is proper is this District pursuant to 28 U.S.C. § 1391(b) and (c) because LaPiana and Elizondo both reside in Texas, within this District.

## IV. FACTUAL BACKGROUND

13. Kodiak is the largest contract natural gas compression services provider in the continental United States. Kodiak provides contract compression and related services to oil and gas producers and midstream customers in high-volume gas gathering systems, processing facilities, multi-well gas lift applications, and natural gas transmissions systems.

14. Over time, and after expending significant resources and effort, Kodiak has developed and maintained confidential, proprietary, and trade secret information that provides it with a direct advantage over its competitors in the industry.

15. Kodiak's confidential, proprietary, and trade secret information includes, without limitation, information related to Kodiak's technology (including its proprietary methods, processes, discoveries, and inventions) and the operation of Kodiak's business (including business plans, customer information, customer contract terms and conditions, pricing and bidding methodologies and employee compensation).

**A. Kodiak's Employment of LaPiana and Elizondo**

16. On March 26, 2018, Kodiak hired Alex LaPiana in the role of Director of Corporate Development. In November 2020, LaPiana was promoted to Vice President of Corporate Development. LaPiana was promoted again in May of 2024 to Assistant Treasurer. LaPiana's responsibilities in these roles included building and maintaining strategic financial models, analyzing potential mergers and investments, managing Kodiak's cash flow, identifying and managing financial risks, preparing and presenting financial reports, and providing financial insights and recommendations to senior management to support strategic decision-making. In connection with his roles, LaPiana had access to sensitive documents like Kodiak's core internal financial information.

17. On March 23, 2015, Kodiak hired Jesus "Chuy" Elizondo in the role of Area Manager. Elizondo was promoted several times during his tenure with Kodiak, at various points serving in key executive leadership roles including Vice President of Technical Services, and Vice President of Operations, ecoView. In these roles, Elizondo was involved with many aspects of Kodiak's business, including the development and implementation of ecoView, Kodiak's proprietary data collection and transmission system. Kodiak developed ecoView to monitor methane emissions and other data on compression units in real-time. Elizondo's most recent role with Kodiak was Regional Director. The responsibilities associated with the Regional Director position include working on ecoView installations. In connection with his various roles at Kodiak,

Elizondo had access to confidential, proprietary, and trade secret information relating to the installation, configuration, and maintenance of ecoView hardware, ecoView's standard operating procedures and training materials, Kodiak's customers, and the data collected by ecoView. At all times during his employment, Elizondo worked out of Kodiak's headquarters in Conroe, Texas, or The Woodlands, Texas.

### B. LaPiana and Elizondo Had Access to Kodiak's Confidential, Proprietary, and Trade Secret Information

18. During their respective employments with Kodiak, LaPiana and Elizondo generated, received access to, and used Kodiak's confidential, proprietary, and trade secret information.

19. This included technical information and materials (e.g., computer programs; technological data; methods and processes; discoveries and inventions; training programs; and charts, products, and services), business information and materials (e.g., market and business analyses; growth and acquisition plans; strategic and financial information; supplier and vendor information; and customer lists, contracts, preferences, and contact information), personnel information and materials (e.g., employee performance and compensation information; and recruiting sources), and other information and materials held and/or developed by Kodiak which derived, and continue to derive, value from not being publicly known.

20. Kodiak's confidential, proprietary, and trade secret information relates to Kodiak's own business and, in some instances, to the business(es) of Kodiak clients. Kodiak has spent substantial financial resources developing, compiling, and maintaining this information for its exclusive benefit. The information derives independent economic value from the fact that it is neither generally known nor readily ascertainable by proper means by Kodiak's competitors or their employees. Kodiak does not disclose this information to their competitors and takes

reasonable efforts to protect this information from unauthorized use and disclosure. This information is used by Kodiak in interstate commerce.

21. In the course of his employment with Kodiak, Elizondo contributed to the conception and/or development of one or more inventions which are presently the subject of patents held by Kodiak. As described below, Elizondo was required by the terms of his employment to—and did in fact—assign the patent rights to his inventions to Kodiak. As reflected in such agreements between Kodiak and its employees, Kodiak specifically considers its inventions and other intellectual property to be within the scope of its confidential, proprietary, and trade secret information.

### C. During Their Employment With Kodiak, LaPiana and Elizondo Executed Restricted Covenant Agreements with Kodiak in Exchange for Awards of Kodiak Stock

22. Kodiak encourages its employees to work hard and safeguard Kodiak's goodwill, relationships, and information by periodically awarding select employees stock ownership via Restricted Stock Unit awards.

23. Ownership in Kodiak comes with enhanced measures to protect Kodiak's information and trade secrets. Among other things, stock ownership requires employees, as appropriate, to agree to confidentiality, non-disclosure, non-interference, and non-solicitation agreements.

24. During his employment with Kodiak, LaPiana received three Restricted Stock Unit awards, in July 2023, December 2023, and March 2024, respectively. In connection with these awards, LaPiana executed three separate but identical Restricted Unit Agreements (collectively, the "LaPiana RSU Agreement").[1] In executing the LaPiana RSU Agreement, LaPiana agreed to

[1] Copies of Defendant LaPiana's RSU Awards and Agreements are attached as **Exhibits 1–3**. LaPiana accepted the awards on July 25, 2023, December 20, 2023, and March 13, 2024, respectively. **Exhibit 6**.

adhere to "any and all restrictive covenant agreements and obligations to which [he was] subject, including, but not limited to, any confidentiality, non-disclosure, non-competition, non-solicitation, non-disparagement or other restrictive covenants in any other agreement by and between [Kodiak] and [LaPiana]." Exhibits 1–3, LaPiana RSU Agreement at § 5(a).

25. During his employment with Kodiak, Elizondo received two Restricted Stock Unit awards, in July 2023 and March 2024, respectively. In connection with these awards, Elizondo executed two separate Restricted Unit Agreements (collectively, the "Elizondo RSU Agreement").[2] The Elizondo RSU agreement was identical to the LaPiana RSU Agreement in that Elizondo agreed to abide by any and all restrictive covenant agreements between himself and Kodiak, including, but not limited to, any confidentiality, non-disclosure, non-competition, non-solicitation, non-disparagement or other restrictive covenants. Exhibits 4 & 5, Elizondo RSU Agreement at § 5(a).

26. In their respective RSU Agreements, LaPiana and Elizondo specifically agreed to the following Section 5(a):

> **5. <u>Restrictive Covenants</u>**
>
> (a) The Participant acknowledges and agrees that the grant of the RSUs further aligns the Participant's interests with the Company's long-term business interests, and as a condition to the Company's willingness to enter into this Agreement, the Participant agrees to abide by the terms of any and all restrictive covenant agreements and obligations to which the Participant is subject in respect of the Company, including, but not limited to, any confidentiality, non-disclosure, non-competition, non-solicitation, non-disparagement or other restrictive covenants in any other agreement by and between the Company or any Affiliate and the Participant (the "Covenant Obligations").
>
> Exs. 1–5 at § 5(a).

27. During their employment with Kodiak and as a condition of receiving their

---

[2] Copies of Defendant Elizondo's RSU Awards and Agreements are attached as **Exhibits 4 & 5**. Elizondo accepted the awards on August 10, 2023 and March 13, 2024, respectively. **Exhibit 6**.

Restricted Stock Unit awards, Defendants LaPiana and Elizondo also executed separate but identical Restrictive Covenant Agreements (collectively, the "Restricted Covenant Agreement").[3] LaPiana signed three such Restrictive Covenant Agreements in July 2023, December 2023, and March 2024, respectively. In July 2023 and March 2024, respectively, Elizondo signed two Restrictive Covenant Agreements, each identical to the Restrictive Covenant Agreements signed by LaPiana.

28. By signing the Restrictive Covenant Agreement, LaPiana and Elizondo acknowledged that Kodiak's "[b]usiness is intensely competitive" and that their "employment or engagement by [Kodiak] requires that [they] have access to Confidential Information… which is of significant value to [Kodiak] and which [Kodiak] goes to great lengths to keep secret." Ex. 7 at § 1. LaPiana and Elizondo further acknowledged that "the disclosure of any Confidential Information would place [Kodiak] at a serious competitive disadvantage and could do serious damage, financial and otherwise, to the business of [Kodiak]. . . ." *Id.*

29. To that end, the Restrictive Covenant Agreement includes an industry-standard confidentiality covenant. *Id*. at § 3. Pursuant to this confidentiality covenant, LaPiana and Elizondo agreed, while they were employed by Kodiak and at all times thereafter, "to hold in confidence, and not to use, except for the benefit of [Kodiak], or to disclose to any individual or entity without written authorization of [Kodiak], any [of Kodiak's] Confidential Information." *Id.*

30. Section 2(d) of the Restrictive Covenant Agreement defines "Confidential Information:"

> **2. <u>Definitions</u>**
>
> (d) "**<u>Confidential Information</u>**" means any and all confidential and proprietary information and materials, as well as all trade secrets, belonging to [Kodiak], their customers, or other third parties who furnished such information, materials, or trade

[3] A copy of the Restricted Covenant Agreement is attached as **Exhibit 7**.

> secrets to the [Kodiak] with reasonable expectations of confidentiality. Confidential Information includes, without limitation and regardless of whether such information or materials are expressly identified or marked as confidential or proprietary, and whether or not patentable: (i) technical information and materials of [Kodiak], their affiliates, their customers, or other third parties, including but not limited to computer programs, software, databases, methods, formulae, compositions, technological data, processes, discoveries, inventions, ideas, surveys, designs, developmental or experimental work, original works of authorship, training programs, and procedures, diagrams, charts, products, and services (including product developments, product specifications, and technical specifications), and similar items; (ii) business information and materials of [Kodiak], their affiliates, their customers or other third parties, including but not limited to market and business analyses, growth plans, acquisition prospects, strategic information, financial information, business plans, business proposals, customer contract terms and conditions, pricing and bidding methodologies and data, sales data, customer information (e.g., customer lists, customer contact information, the identity of customers, the identity of key contacts within customer organizations, customer preferences, and other business information about customers), supplier and vendor information, business partner lists, business partner contact information, business partner preferences, credit information, selling and marketing data, contracts, and similar data; (iii) information and materials relating to future plans of [Kodiak], their affiliates, their customers, or other third parties, including but not limited to marketing strategies, marketing techniques, prospective names and marks, copyrights, and other intellectual property, new product research, pending projects and proposals, acquisition plans, strategic alliances, research and development efforts and strategies, and similar items; (iv) personnel information and materials of [Kodiak], their affiliates, their customers, or other third parties including but not limited to employee performance information, employee compensation information, employee benefits information, recruiting sources, contractor and consulting information, contacts, costs, and similar items; (v) any information or material that gives [Kodiak] an advantage with respect to its competitors by virtue of not being known by those competitors; and (vi) other valuable, confidential information and materials or trade secrets of [Kodiak], their affiliates, their customers, or other third parties that may or may not be explicitly identified or marked as confidential or proprietary.

*Id.* at § 2(d).

31. LaPiana and Elizondo also agreed in Section 3 of the Restrictive Covenant Agreement to "follow all [Kodiak] policies and protocols regarding the security of all documents and other materials containing Confidential Information (regardless of the medium on which Confidential Information is stored)." *Id.* at § 3(a). Section 3 further provides that, "[e]xcept to the extent required for the performance of the Employee's duties on behalf of [Kodiak], the Employee shall not remove from facilities of [Kodiak] any information, property, equipment, drawings,

notes, reports, manuals, invention records, computer software, customer information, or other data or materials that relate in any way to the Confidential Information, whether paper or electronic and whether produced by the Employee or obtained by [Kodiak].” *Id.*

32. LaPiana and Elizondo also agreed in Section 3 of the Restrictive Covenant Agreement to return Kodiak’s property to Kodiak upon termination of their employment, or at any time requested by Kodiak:

> **3. <u>Confidential Information</u>**
>
> (c) At any time requested by [Kodiak], and upon the Date of Termination, the Employee shall deliver to the [Kodiak] (and will not keep in the Employee’s possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information (including electronically stored information), and property developed by the Employee pursuant to the Employee’s employment or service with any member of [Kodiak] or otherwise belonging to [Kodiak] and all copies thereof and all other materials of any nature containing or pertaining to all Confidential Information and any other [Kodiak] property (including any [Kodiak]-issued computer, mobile device or other property or equipment) in the Employee’s possession, custody or control and the Employee shall not retain any such documents or other materials or property of [Kodiak]. Within five days of any such request, the Employee shall certify to [Kodiak] in writing that all such documents, materials and property have been returned to [Kodiak].
>
> *Id.* at 3(c).

33. The Restrictive Covenant Agreement also includes non-interference and customer non-solicitation covenants. *Id.* at § 5(a). Specifically, LaPiana and Elizondo agreed that they would not, during their employment with Kodiak or within six months of their respective terminations, “directly or indirectly, for the Employee’s own account or for the account of any other person or entity,” engage in “Interfering Activities” or “call on, service, solicit, or accept business from” certain of Kodiak’s customers. *Id.* at § 5(a), 2(j). The Restrictive Covenant Agreement defines “Interfering Activities” to include (1) encouraging or attempting to encourage (or assisting another in encouraging or attempting to encourage) certain Kodiak employees to terminate their employment with Kodiak, and (2) servicing, soliciting, or accepting business from certain of

Kodiak's customers. *Id.* at § 2(h). The client non-interference restriction is narrowly tailored to only include "Covered Customers," which is defined as customers with which either Elizondo or LaPiana had Business-related contact or about which they received Confidential Information, in each case during the 12-month period preceding the termination of their employment. *Id.* at § 2(e), 5(a).

34. LaPiana and Elizondo were granted substantial consideration for the foregoing covenants through stock equity grants.

35. LaPiana and Elizondo acknowledged that they were given sufficient time to consider the Restrictive Covenant Agreement, and that they "had an opportunity to consult with… [an] attorney or other advisers prior to executing" it. *Id.* at 13(d). LaPiana and Elizondo also acknowledged that the restrictive covenants contained in the Restrictive Covenant Agreement were "reasonable and valid in geographical and temporal scope." *Id.* at 1. At no point before this litigation did LaPiana or Elizondo complain that the covenants in the Restrictive Covenant Agreement were unreasonable or unenforceable—despite having that ability when presented with the Agreement.

36. LaPiana and Elizondo agreed that, in the event of their breach of the Restrictive Covenant Agreement, Kodiak could seek "injunctive relief, specific performance, or other equitable relief . . . ." *Id.* at § 8.

**D. In September 2024, LaPiana and Elizondo Resigned from Kodiak and Joined a Competitor of Kodiak, Where They Remain Employed Today**

37. On September 16, 2024, LaPiana voluntarily resigned from his role as Assistant Treasurer at Kodiak.

38. Mere days later, on September 20, 2024, Elizondo voluntarily resigned from his Kodiak role of Regional Director.

39. Shortly after LaPiana and Elizondo's resignations, Kodiak learned that both Defendants had accepted employment at one of Kodiak's competitors. The particular competitor that LaPiana and Elizondo joined had been recently founded by a former Kodiak executive. Upon information and belief, LaPiana and Elizondo currently remain employed by that competitor.

### E. LaPiana and Elizondo Breached Their Legal and Contractual Duties to Kodiak

40. After learning that LaPiana and Elizondo had joined a competitor, Kodiak hired an independent third-party investigator to conduct a forensic analysis of LaPiana and Elizondo's Kodiak-issued computers.

41. Kodiak's counsel also sent reminder of obligations letters to LaPiana and Elizondo, reminding them about their contractual obligations and demanding return of all confidential information in their possession.

42. LaPiana and Elizondo both responded to their respective letters. In his response, Elizondo stated that he would "comply with [his] continuing obligations" and he represented that he "returned all confidential information, documents, and property to Kodiak and [] destroyed any copies of such information, documents and property in [his] possession, custody, or control."

43. In LaPiana's response, he certified that he "complied with and will continue to comply with [his] post-employment obligations to the Company," that he "is not in possession of Confidential Information," and that he has "returned all Confidential information to the Company."

44. Their actions, however, demonstrate otherwise.

45. Kodiak's subsequent forensic investigation shows that on June 24, 2024 and periodically during August 2024, while still employed by Kodiak, LaPiana used his Kodiak-issued computer to access a SharePoint—an online document management and collaboration platform or

"cloud"—belonging to Kodiak's competitor, where LaPiana is currently employed.

46. The forensic investigation also shows that, on August 27, 2024, LaPiana accessed a directory labeled "Whitney Bank/Whitney Docs." This directory contains Kodiak's core internal financial information, including its banking information, which LaPiana did not have any legitimate reason (i.e., any reason in connection with the performance of his duties at Kodiak) to access at the time. Accordingly, the access was unauthorized.

47. Also in August 2024, while still employed by Kodiak, LaPiana used his Kodiak-issued computer to access a Gmail account associated with his then-forthcoming employment with Kodiak's competitor.

48. In September 2024, while still employed by Kodiak, Elizondo connected an Apple iPhone and a JMicron external hard drive to his Kodiak-issued computer and accessed Kodiak's OneDrive cloud storage platform. On September 15, 2024, Elizondo—without authorization—copied documents from Kodiak's OneDrive cloud storage platform to the JMicron external hard drive. The documents that Elizondo copied include a folder labeled "TECH SERVICES," containing confidential, proprietary, and trade secret information relating to the overhauling of Kodiak equipment, including but not limited to: customer data, equipment failure data, pricing information, software, and schematics, manuals, and procedures. The JMicron external hard drive has not been found on Kodiak premises and it was not returned to Kodiak by Elizondo.

49. Upon information and belief, Elizondo removed the JMicron drive from Kodiak premises and has it in his possession, in violation of his agreement to "not remove from facilities of [Kodiak] any information . . . relate[d] in any way to . . . [Kodiak's] Confidential Information" except as required in the course of Elizondo's performance of his duties for Kodiak. Ex. 7 at 3(a).

50. The forensic investigation also reveals that before his resignation, Elizondo copied

Kodiak's confidential, proprietary, and trade secret information from his Kodiak-computer without authorization, and, upon information and belief, removed such information from Kodiak's premises.

51. LaPiana and Elizondo can use—and likely are using—Kodiak's proprietary, confidential, and trade secret information to compete with Kodiak, in connection with their work for Kodiak's competitor, in violation of federal and state trade secret law and the confidentiality provisions of the Restrictive Covenant Agreement.

52. The full extent of Defendants' misappropriation and theft of Kodiak's proprietary, confidential, and trade secret information will be determined through discovery in this matter.

## V. CAUSES OF ACTION

### A. Trade Secret Misappropriation under the DTSA (Both Defendants)

53. Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

54. The actions of LaPiana and Elizondo, as described above, constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA").

55. Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

56. The DTSA further provides that "a court may grant an injunction—to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable . . ." 18 U.S.C. § 1836(b)(3)(A).

57. Kodiak has spent substantial financial resources developing and maintaining their trade secrets for their exclusive benefit. Kodiak's trade secrets derive independent economic value from the fact that they are neither generally known nor readily ascertainable by proper means by

Kodiak's competitors or their employees, specifically including LaPiana and Elizondo. Kodiak does not disclose its trade secrets to its competitors and has made reasonable efforts to protect them from unauthorized use and disclosure.

58. The measures that Kodiak has taken to protect its trade secrets from unauthorized use and disclosure include, but are not limited to, confidentiality agreements, restrictive covenant agreements, and password-protected computers and databases.

59. Through their employment with Kodiak, LaPiana and Elizondo acquired Kodiak's trade secrets, including information about Kodiak's business, technology, operations, and personnel. Such trade secrets specifically include, without limitation, information about Kodiak's customers, proprietary technology, core internal finances, pricing, financial plans and models, training materials, and schematics, manuals, and procedures. These trade secrets include information that Kodiak used to provide services and otherwise do business outside of Texas.

60. Kodiak provided its trade secrets to LaPiana and Elizondo in confidence and with the understanding that they would use Kodiak's trade secrets solely to perform their responsibilities with Kodiak. LaPiana and Elizondo were also paid substantial sums of money, through their regular compensation and stock awards, in exchange for the trade secrets and confidential information they developed prior to resigning from their executive roles with Kodiak. LaPiana and Elizondo knew that Kodiak intended for all such trade secrets to remain confidential and to be used solely to perform their respective responsibilities with Kodiak.

61. By engaging in the conduct described above, Defendants LaPiana and Elizondo have misappropriated, and have threatened to continue to misappropriate, Plaintiff's trade secrets in violation of the DTSA. In the course of their employment with a competitor, Defendants have misappropriated trade secrets used in interstate or foreign commerce and related to Kodiak's

technological and business operations, including the trade secret information that LaPiana and Elizondo took from their Kodiak-issued computers. The full extent of Defendants' misappropriation will be determined through discovery in this matter.

62. Upon information and belief, Defendants LaPiana and Elizondo intend to convert and use Kodiak's trade secrets for their own economic benefit, and the economic benefit of their current employer, a competitor of Kodiak.

63. Defendants LaPiana and Elizondo can obtain economic value for the disclosure and use of Kodiak's trade secrets, for example by using that information to offer natural gas compression and related services in competition with Kodiak.

64. Defendants' misappropriation has been and continues to be willful and malicious, as evidence by the conduct addressed throughout this Complaint.

65. As a direct and proximate result of this trade secret misappropriation, Plaintiff has suffered and will continue to suffer irreparable injury and is entitled to permanent injunctive relief and attorneys' fees under the DTSA.

**B. Trade Secret Misappropriation under the TUTSA (Both Defendants)**

66. Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

67. Kodiak has spent substantial financial resources developing and maintaining its trade secrets for its exclusive benefit. Kodiak's trade secrets derive independent economic value from the fact that they are neither generally known nor readily ascertainable by proper means by Kodiak's competitors or their employees, including Defendants LaPiana and Elizondo. Kodiak does not disclose its trade secrets to its competitors and has made reasonable efforts to protect them from unauthorized use and disclosure.

68. Through their employment with Kodiak, LaPiana and Elizondo acquired Kodiak's

trade secrets, including information about Kodiak's business, technology, operations, and personnel. Such trade secrets specifically include, without limitation, information about Kodiak's customers, proprietary technology, core internal finances, pricing, financial plans and models, training materials, and schematics, manuals, and procedures.

69. Kodiak provided its trade secrets to LaPiana and Elizondo in confidence and with the understanding that they would use Kodiak's trade secrets solely to perform their responsibilities with Kodiak. LaPiana and Elizondo were also granted substantial amounts of Kodiak stock in exchange for agreeing to restrictive employment covenants that imposed upon them certain confidentiality and non-disclosure obligations. LaPiana and Elizondo knew that Kodiak intended for all such trade secrets to remain confidential and to be used solely to perform their responsibilities for Kodiak.

70. Defendants LaPiana and Elizondo have misappropriated Kodiak's trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE §§ 134A.001–.008. The full extent of Defendants' misappropriation will be determined through discovery in this matter.

71. Defendants' misappropriation has been and continues to be willful and malicious, as evidenced by the conduct addressed throughout this Complaint.

72. As a direct and proximate result of this trade secret misappropriation, Plaintiff Kodiak has suffered and will continue to suffer irreparable injury and is entitled to permanent injunctive relief and attorney's fees under TUTSA.

**C. Breach of Contract – Non-disclosure and Confidentiality Covenants**

73. Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

74. Defendants LaPiana and Elizondo entered into Restricted Unit Agreements and the

Restrictive Covenant Agreement during their employment with Kodiak, as a condition of receiving valuable awards of Kodiak stock in the form of RSUs.

75. The Restricted Unit Agreements and the Restrictive Covenant Agreement between Kodiak and LaPiana, and Kodiak and Elizondo, respectively, are valid and enforceable.

76. The LaPiana and Elizondo Restricted Unit Agreements, contain provisions requiring LaPiana and Elizondo, respectively, to "abide by the terms of any and all restrictive covenant agreements and obligations to which the Participant is subject in respect of [Kodiak], including, but not limited to, any confidentiality, non-disclosure, non-competition, non-solicitation, non-disparagement or other restrictive covenants in any other agreement by and between [Kodiak]" and themselves. The scope of the Restricted Unit Agreement extends to the Restrictive Covenant Agreement, which both LaPiana and Elizondo signed.

77. LaPiana and Elizondo breached the "Confidential Information" and nondisclosure provisions contained in Section 3(a) of the Restrictive Covenant Agreement when they—without authorization and for their own benefit, and/or for the benefit of Kodiak's competitor—copied Kodiak's proprietary, confidential, and trade secret information from their respective Kodiak computers and otherwise removed such information from Kodiak's premises.

78. LaPiana and Elizondo breached the "Confidential Information" provisions contained in Section 3(c) of the Restrictive Covenant Agreement when they failed to deliver to Kodiak within five days of their respective resignations the confidential information belonging to Kodiak that was in their possession, including, but not limited to, the Confidential Information and related property LaPiana and Elizondo removed without authorization from their respective Kodiak computers.

79. Plaintiff Kodiak has suffered damages and will continue to suffer damages as a

direct and proximate consequence of the breaches and anticipated breaches of LaPiana and Elizondo's confidentiality covenants. Kodiak is entitled to recover compensatory damages. Kodiak is further entitled to its attorneys' fees incurred in enforcing its rights under the Restrictive Covenant Agreement, plus additional sums in the event of an appeal, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## VI. JURY DEMAND

80. Plaintiffs demand a trial by jury as to all claims that may be tried to a jury.

## VII. PRAYER FOR RELIEF

81. WHEREFORE, Kodiak respectfully requests that the Court:

a. After a trial on the merits, issue a permanent injunction ordering specific performance by LaPiana and Elizondo of the restrictive covenants in the Restrictive Covenant Agreement;

b. Issue an order compelling Defendants LaPiana and Elizondo to turn over to Kodiak, through Kodiak's undersigned counsel, any and all property belonging to Kodiak, including its confidential information and trade secrets mentioned above;

c. Enter judgment against Defendants LaPiana and Elizondo as requested herein, jointly and severally, for Plaintiff Kodiak's attorneys' fees and costs (as allowed by statute, common law, and contract);

d. Grant Kodiak all other relief, in law and in equity, to which it may be entitled.

Dated: December 16, 2024

MORGAN, LEWIS & BOCKIUS LLP

By: */S/ MICHAEL P. JONES*

**Michael P. Jones**
State Bar No. 24072174
Federal ID No. 1091718
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street
Suite 4000
Houston, TX 77002
Telephone: +1.713.890.5000
Facsimile: +1.713.890.5001
michael.jones@morganlewis.com

**Ronahn I. Clarke**
*Pro Hac Vice* forthcoming
Massachusetts Bar No.: Pending
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110
Phone: (617) 341-7700
Fax: (617) 341-7701
ronahn.clarke@morganlewis.com